IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TRISTIAN WILLIAM LANGER,

                Plaintiff,                OPINION AND ORDER

v.

                                            19-cv-426-wmc

ANDREW M. SAUL, Commissioner of
Social Security,

                Defendant.

---

Pursuant to 42 U.S.C. § 405(g), plaintiff Tristian William Langer seeks judicial review of a final determination that he was not disabled within the meaning of the Social Security Act. Langer contends that remand is warranted because the administrative law judge ("ALJ"): (1) failed to properly evaluate the medical opinion evidence, particularly the opinions of plaintiff's treating psychiatrists, Jennifer L. Beyer, M.D., and Himanshu Agrawal, M.D; (2) erred in evaluating Langer's mental residual functional capacity ("RFC"); and (3) erred in evaluating Langer's subjective allegations. For the reasons that follow, the court will remand for further proceedings consistent with this opinion and order.

BACKGROUND[1]

**A. Overview**

Plaintiff Langer applied for child's insurance benefits based on disability on June 30, 2014, and filed for supplemental security income on August 25, 2015. He originally

---

[1] The following facts are drawn from the administrative record (dkt. #10), including the ALJ hearing transcript (dkt. #16).

claimed a disability onset date of September 15, 1995, his date of birth, but later amended the date to February 1, 2014.[2] Langer was 20-years-old at the time he filed his application for child's insurance benefits, and 21-years-old at the time he filed for SSI. He was 18-years-old at the time of his alleged disability onset date, which is defined as a younger individual. 20 C.F.R. § 404.1563, § 416.963.

Langer has at least a high school education and is able to communicate in English, but has no past, relevant work. Still, at least at the time of the hearing in front of the ALJ, he was working through Endeavors Adult Development Center, a sheltered work environment where he had a full-time job coach.

Langer claimed disability based on oppositions defiant disorder, Asperger's disorder - autism spectrum, ADHD, anxiety disorder and a disorder of written expression. (AR 97.)

## B. ALJ Decision

ALJ Michael Schaefer held an evidentiary hearing via videoconference on October 31, 2017, at which plaintiff appeared personally and by counsel. As of the alleged onset date of February 1, 2014, the ALJ found that Langer had the following severe impairments: autism spectrum disorder; attention deficit hyper activity disorder; personality disorder; and anxiety disorder. (AR 30.) Next, the ALJ considered whether any of plaintiff's impairments or combination of impairments met or medically equaled any of the listings. Material to this appeal, the ALJ specifically considered whether plaintiff's mental

---

[2] To be entitled to child's benefits, a claimant must show, among other things, that he is under the age of 18; 18 or older and has a disability that began before he turned 22 years old; or is 18 or older and qualified for benefits as a full-time student. 20 C.F.R. § 404.350.

impairments met the relevant listings. As part of that analysis, the ALJ considered the "paragraph B" criteria, finding that Langer had moderate limitations in all four categories: understanding, remembering or applying information; interacting with others; concentrating, persisting, or maintaining pace ("CPP"); and adapting or managing oneself. (AR 30-31.)[3] In making these findings, the ALJ relied on Langer's own statements about his abilities, a 2014 IEP report from his high school, and the opinions of the two state agency medical consultants.

In crafting Langer's residual functional capacity ("RFC"), the ALJ found that Langer could perform "a full range of work at all exertional levels," but included the following non-exertional limitations to address his mental health impairments:

> Due to the claimant's mental impairments and symptoms, the claimant is limited to understanding, remembering, and carrying out simple instructions and routine, repetitive tasks (at the G.E.D. Language Level 1 or below and Reasoning Level 1 or below) with only simple work-related decisions or judgments in a work environment with no fast-paced production requirements and few, if any, changes in work duties. The claimant is limited to work with no direct public interaction. Finally, the claimant is limited to only occasional, brief, and superficial interaction with coworkers and no more than frequent interactions with supervisors.

(AR 32.) In determining these non-exertional limitations, the ALJ acknowledged but discounted Langer's representations that: he "requires reminders, has poor planning and

---

[3] Later in the opinion, the ALJ states that he finds marked limitations in adaptation. (AR 37.) Plaintiff does not point out this apparent inconsistency, perhaps because the ALJ also states that he accommodated this marked limitation in the RFC by "limit[ing] him to low stress work, including the need to make only simple work decisions or judgments, few changes in work duties, no public interaction, and only brief and superficial interaction with coworkers." (AR 37.)

3

communication skills, and has trouble advocating for himself"; that he "has been involved with law enforcement due to disorderly conduct and manages stress poorly"; and that "he has a limited ability to work due to completing tasks, concentrating, following instructions, getting along with others, and managing stress." (*Id.*)

The ALJ discounted Langer's testimony primarily because "[s]ince the amended alleged onset date of February 1, 2014, the claimant has consistent[ly received] counseling and medication management for these impairments," and has shown improvement over this period. (AR 33.) The ALJ also reviewed in great detail Langer's treatment history with Dr. Jennifer L. Beyer from February 2014 through July 2017, during which she modified his medication -- specifically introducing and increasing clonidine and then transitioning him to Intuniv -- in an attempt to improve the frequency and severity of his outbursts, with noted success. (AR 33-35.) The ALJ similarly noted that, while Dr. Beyer generally observed Langer's flat or constricted affect, she consistently found his mental status was "normal" upon examination, and more specifically, that he had "normal attention, memory behaviors, and thought processes." (*Id.*) Finally, the ALJ reviewed Langer's engagement in counseling during this same period to address anger and impulsivity, as well as evaluations by various therapists who observed: "fair insight and judgment, and normal memory, concentration and attention"; "no impairment in memory, organized thought process, and reality based thought content"; "intelligent as being average or below average"; "good insight and judgment." (AR 35.) Based on his review, the ALJ concluded that "claimant has shown significant improvement with anger management related to learning coping skills and working through emotional issues in counseling and

4

taking medication on a consistent basis," and is "capable of greater independence." (AR 36.)

The ALJ also considered the opinion testimony concerning plaintiff's mental limitations, placing little weight on the opinions of Dr. Beyer and Dr. Himanshu Agrawal, despite their status as Langer's treating psychiatrists. As for Dr. Agrawal, he completed a form dated December 18, 2013 -- before the alleged onset disability date -- in support of an application for guardianship over Langer by his grandmother. On the form, Dr. Agrawal opined that Langer had "moderate to severe impairment in attention/concentration, sensory and motor function, language/communication, and emotional and behavioral function"; "moderate impairment in memory, reasoning, and other executive functioning"; and that his "mental impairments caused severe incapacities." (AR 36.) Nevertheless, the ALJ discounted this opinion for three core reasons: (1) it was not consistent with the medical record, and specifically mental status examination showing normal memory and attention, along with fair to good insight and judgment; (2) the fact that Dr. Agrawal did not treat Langer from 2014 onwards during which he showed improvement; and (3) the form was completed in a different context. (*Id.*)

As for Dr. Beyer, the ALJ placed little weight on her two completed forms. In a form dated April 10, 2015, Dr. Beyer opined that Langer "had moderate restrictions in activities of daily living and marked difficulties in social functioning and maintaining concentration, persistence and pace" and would be absent two days per month. (AR 37 (citing Ex. 7F).) Then, in an updated form dated September 19, 2017, Dr. Beyer opined that Langer had "moderate limitations understanding, remembering or applying

5

information and concentrating, persisting, or maintain pace" and "marked limitations interacting with others and adapting or managing himself." (*Id.* (citing Ex. 11F).) While the ALJ acknowledged Dr. Beyer's expertise in psychiatry and her treating relationship with Langer, the ALJ discounted her opinions because: (1) they "appear to be related to subjective statements"; (2) they "are not consistent with her own treatment notes," specifically mentioning "normal mental status examinations" and that his outbursts "were related to stressful interactions with coworkers;" and (2) "there is no indication she is familiar with disability standards." (AR 37.)

Instead, the ALJ purported to place some weight on the opinions of the two state agency medical consultants, Ester Lefevre, Ph.D., and Russell Phillips, Ph.D., while adding additional restrictions relating to Langer's interactions with coworkers and stressful activities based on Dr. Beyer's and the therapist's treatment notes. (AR 37.) In particular, the ALJ credited Dr. Lefevre's finding of Langer's moderate limitations with respect to the categories for review (*id.* (citing Ex. 2A)), and Dr. Phillips's opinion that Langer: (1) "could understand, recall, persist, and maintain attention for two hour periods for simple tasks over eight and forty hour periods with normal supervision"; and (2) could "tolerate the minimum social demands of a simple task setting and could tolerate simple changes in routine." (*Id.* (citing Ex. 4A).)

Consistent with this approach, the ALJ summarized his reasons for providing the non-exertional limitations in the RFC as follows:

> I have limited the claimant to simple, routine, repetitive tasks without fast-paced production requirements based on the claimant's diagnoses ADHD and education evidence he has, at least in the past, had difficulty staying on task when

6

> uninterested in topics. Based on the claimant's developed coping skills, I have assessed the claimant with marked limitations in adaptation and limited him to low stress work, including the need to make only simple work decisions or judgments, few changes in work duties, no public interaction, and only brief and superficial interaction with coworkers. The claimant current has frequent interaction with supervisors without evidence of difficulty.

(AR 37.) Based on this RFC, and in consultation with the vocational expert, the ALJ finally concluded that there were jobs in the national economy in significant numbers that Langer could perform, including housekeeping/cleaner and assembler.

### C. Other Medical Records

As for other medical evidence, a July 2014 intake form completed by Perry Anderson, MSW, LCWS, for Polk County Human Services noted Langer's issues with his temper, including requiring police intervention, destructive behavior and inattention, as well as hyperactive motor activity and no apparent remorse for behavioral transgressions. (AR 344-47.)[4] Consistent with these observations, Anderson assessed Langer with poor social interaction, ADHD and autism spectrum disorder. In an intake form dated August 11, 2014, from Peace Tree Counseling, Val Zellmer, MS, marked Langer's motor activity as agitate, his affect as expansive, worrisome and sad, his mood as depressed and anxious, and indicated that his memory, abstract thinking and judgment were "impaired." (AR 392.) Treatment notes also reflect that Langer saw Zellmer and other therapists at Peace Tree on a regularly for the next eight months, until April 2015. (AR 393-410.) Those

---

[4] The record reflects that Langer also saw Anderson for therapy sessions beginning in January 2012 through March 2014. (AR 338-43.)

7

notes reflect that Langer was consistently described as calm, clear, engaged and linear thinking, though his symptoms were sometimes described as angry, sad and anxious. The notes further reflect that Langer sought therapy to address conflict with his step-grandmother and other family members, combined with grief from the death of his father and abandonment by his mother.

In February 2016, Langer began to see Colleen E. Erb, Psy.D., for therapy, complaining of "anxiety, impulsiveness, irritability, mood swings, inflexibility, poor frustration tolerance, . . . racing thoughts, and a history of violent behaviors o[r] thoughts." (AR 427.) Langer also expressed an interest in working on "increasing his frustration tolerance." (*Id.*) Dr. Erb's mental status examination noted that his eye contact was "consistent with high functioning autism"; thought process was "organized"; "no impairment" of memory"; mood and affect were "appropriate"; and intelligence was estimated as "average and below average." (AR 430.) The record reflects that Langer attended therapy with Dr. Erb on a regular basis for the next six months, took a year off, and then returned again to see her in August 2017. (AR 432-48, 453-54, 478-80.) Dr. Erb's initial assessment of Langer's mental status remained consistent with her initial view. During the course of the therapy with Erb, Langer reported improvement with this temper, although he also recounted violent outbursts at work, including twisting the arm of a peer.

As noted above, the record further reflects that Langer saw Dr. Beyer on a regular basis from June 2015 to July 2017, primarily for medication management. (AR 411-26,

8

449-53, 455-59, 475-78.)[5] During this time, Langer was on clonidine (later transitioning to Intuniv), Abilify and Wellbutrin XL. Specifically, Dr. Beyer increased Langer's dose of clonidine over time, eventually changed the timing of his two clonidine doses to address irritability, and then changed his clonidine prescription to Intuniv. Beyer's notes confirm that Langer's primary treatment need was control of irritable outbursts and his outbursts were better managed with medication changes, although her notes also consistently describe recent outbursts at work. Beyer's mental status examinations consistently describe Langer's behaviors as "unremarkable." Still, she generally described Langer's affect as "somewhat flat"; his memory as "intact"; his intellect as "average"; his attention as "maintained"; and reasoning, impulse control, judgment and insight as "fair." (*See, e.g.*, AR 413.)

OPINION

A federal court's standard of review with respect to a final decision by the Commissioner of Social Security is well-settled. Findings of fact are "conclusive," so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that

---

[5] In the April 10, 2015, form, Dr. Beyer indicates that she began seeing Langer in December 2012.

of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993). At the same time, the court must conduct a "critical review of the evidence," *id.*, and insure the ALJ has provided "a logical bridge" between findings of fact and conclusions of law, *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).

As detailed above, Langer raises three challenges on appeal, which the court addresses separately below.

## I. Treatment of Drs. Beyers and Agrawal's Opinions

Plaintiff contends that the ALJ erred in failing to give controlling weight to plaintiff's two treating psychiatrists: (1) Dr. Agrawal, who treated plaintiff up until 2013, which precedes his alleged disability onset date; and (2) Dr. Beyer, who treated plaintiff from 2012 through the hearing date. An ALJ who does not give controlling weight to the opinion of a claimant's treating physician must offer 'good reasons' for declining to do so." *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(2)). Generally, the opinions of a claimant's treating physician are "give[n] more weight" because he or she is "likely to be the medical professional[] most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative

examinations." 20 C.F.R. § 404.1527(d)(2) (2011).[6] If an ALJ chooses not to give a treating physician's opinion controlling weight, "the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistent and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2019).

As described above, Dr. Beyer's opinions include two important limitations that the ALJ disregarded. First, Dr. Beyer found Langer has marked limitations with respect to two of the four paragraph B criteria: "interacting with others" and "adapting or managing themselves." (AR 472.)[7] This is significant because two "marked" limitations in these broad areas of functioning satisfy the paragraph B criteria for purposes of determining whether a claimant's impairments or combination of impairments satisfies a listing. 20 C.F.R. Part 404, Subpart P, Appendix 1. Second, Beyer found that Langer would miss two days of work a month (AR 382), which may also render plaintiff unemployable if credited. *See, e.g.*, *Yurt v. Colvin*, 758 F.3d 850, 855 (7th Cir. 2014) (vocational expert testified that claimant "could not miss more than one or two days per month" to be employable).

In evaluating Dr. Beyer's opinions, the ALJ properly acknowledged her expertise in psychiatry and her long-standing treatment relationship with Langer (dating back some 5 years), both of which would weigh in favor of placing controlling weight on her opinions.

---

[6] This regulation governs claims filed before March 27, 2017, which includes Langer's claim here.

[7] Although Dr. Beyer's 2015 form had different categories, she indicated that he had moderate restrictions in activities of daily living, consistent with the 2017 form, and marked difficulties in social functioning and maintaining concentration, persistence and pace. (AR 381.)

11

Still, the ALJ claims to have discounted her opinions for three reasons: (1) they "appear to be related to subjective statements"; (2) they "are not consistent with her own treatment notes"; and (3) "there is no indication she is familiar with disability standards." (AR 37.)

The first reason is grounds enough for remand. Indeed, the court agrees with plaintiff that this is an entirely inappropriate basis to discount a medical expert opinion, especially where the limitations concern mental health issues. As the Seventh Circuit explained in *Aurand v. Colvin*, 654 F. App'x 831 (7th Cir. 2016),

> a psychological assessment is by necessity based on the patient's report of symptoms and responses to questioning; there is no blood test for bipolar disorder. The Commissioner cites cases in which ALJs discounted medical opinions resting entirely on subjective complaints of pain that could not be explained by the objective medical evidence. *See Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013); *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). We have cautioned that even physical pain often cannot be explained through diagnostics, *see, e.g.*, *Pierce v. Colvin*, 739 F.3d 1046, 1049–50 (7th Cir. 2014); *Sims v. Barnhart*, 442 F.3d 536, 537 (7th Cir. 2006), but for bipolar disorder there isn't "objective medical evidence" that can support a diagnosis. Thus it's illogical to dismiss the professional opinion of an examining psychiatrist or psychologist simply because that opinion draws from the claimant's reported symptoms.

*Id*. at 837; *see also Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015) ("[P]sychiatric assessments normally are based primarily on what the patient tells the psychiatrist, so that if the judge were correct, most psychiatric evidence would be totally excluded from social security disability proceedings.").

Moreover, nothing in the record suggests that Dr. Beyer viewed Langer as a malingerer or otherwise questioned his veracity, nor that she had reason to do so. *See Barnes v. Saul*, No. 18-CV-660-WMC, 2019 WL 6907397, at *6 (W.D. Wis. Dec. 19,

12

2019) (expressing concern "with an ALJ presuming that a psychiatrist treating a profoundly challenged patient over a three-year period is easily hoodwinked into going along with the subjective claims of a patient (or her attorney) to support a claim for social security, contrary to the physician's own medical assessment and ethical obligation"). As plaintiff points out, even if the ALJ believed that Dr. Beyer was too sympathetic to her patient, the ALJ was required to explain the basis for this finding. *See Hall v. Berryhill*, 906 F.3d 640, 643-44 (7th Cir. 2018) ("If the ALJ somehow found it necessary to offer such a view, he needed to root the observation in specific record evidence—for example, an express statement in a physician's treatment notes. See 20 C.F.R. § 404.1527(c)(2)."), *reh'g denied* (Dec. 18, 2018).

While not quite as troublesome as the ALJ's first stated reason, the second stated reason for discounting Dr. Beyer's opinion -- that Dr. Beyer's opinions were "not consistent with her own treatment notes" -- is still problematic. In particular, the ALJ mentions her notes regarding Langer's "normal mental status examinations" and his outbursts "were related to stressful interactions with coworkers." (AR 37.) In fact, Dr. Beyer's treatment notes recount numerous, other outbursts, whether with family members (specifically, a cousin and step-grandmother) or peers or co-workers at his assisted workplace, some of which resulted in a physical response and, at least on one occasion, involved law enforcement. These treatment notes appear entirely consistent with Dr. Beyer's checking of "marked" for the categories "interacting with others" and "adapting or managing themselves." At minimum, the ALJ failed to explain adequately why Dr. Beyer's notes are *not* consistent with her ultimate findings.

13

Moreover, the ALJ relied on the fact that his outbursts "were related to stressful interactions with coworkers." It is not clear what the ALJ meant by "stressful," but there is no indication in the record that his job was a high-stress job; to the contrary, Langer testified that his job involved putting "carpet clips" and other items in boxes and shipping them and cleaning windows at a church. (AR 499.) Langer also completed his job with the assistance of a full-time job coach to help him, in part, manage relationships with co-workers. Even in that environment, as the ALJ acknowledged in his decision, Langer reported to Beyer at almost every appointment that he had irritable outbursts at work. (AR 34.) Here, too, the court finds the ALJ's characterization that his outbursts were related to "stressful interactions with coworkers" is not contrary to Dr. Beyer's opinion. Similarly, the ALJ's reference to "normal mental status examinations" fails to explain why findings about mood, affect, memory and judgment in the treatment settings were undercut by Beyer's notes about irritable outbursts, her monitoring and adjusting medications in an attempt to control these outburst, or her opinion that Langer had marked limitations with respect to interacting with others and adapting or managing themselves.

Third and finally, the ALJ discounted Dr. Beyer's opinion because "there is no indication she is familiar with disability standards." (AR 37.) Here, too, the court agrees with plaintiff that this statement amounts to no more than rank speculation on the part of the ALJ, particularly because a trained psychiatrist like Dr. Beyer is not only likely to know the meaning of "marked" in checking it on the disability form, but there is little reason to suspect much material difference exists between the use of that term for employment and psychiatric purposes. See *White ex rel. Smith v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999)

14

("Speculation is, of course, no substantiation for evidence, and a decision based on speculation is not supported by substantial evidence."). Regardless, on remand, the ALJ is free to clarify Dr. Beyer's familiarity with disability standards, and her specific meaning in using the term "marked" in that context.

Plaintiff also contends that the ALJ erred in his treatment of Dr. Agrawal's opinions. Having found error with respect to his treatment of Dr. Beyer, the court need not describe this challenge in great detail, other than to note that the ALJ's reliance on purported inconsistencies between Dr. Agrawal's opinion and the medical record is flawed for the same reason as described above with respect to Dr. Beyer's opinions and notes. Moreover, the court also questions whether the fact that this form was completed for a different purpose -- namely, in support of his grandmother's guardianship application -- is a valid basis for discounting it. To the contrary, as plaintiff points out, the regulations do not require that a provider's opinion be submitted solely for the purpose of a social security application for it to be entitled to weight. *See* 20 C.F.R. § 404.1527.

## II. RFC Limitation of Interactions with Others

Related to his first challenge, Langer also seeks remand based on the ALJ's formulation of his RFC, to address his problems in interacting with others, by limiting him to no direct interaction with the public, occasional, brief and superficial interactions with coworkers, and frequent interactions with supervisors. (AR 32.) In particular, plaintiff contends that the ALJ failed to explain how these limitations on interactions address his interpersonal and coping impairments, and even more specifically, address how plaintiff would be able to tolerate even occasional, brief and superficial interactions with coworkers

15

in light of the record evidence showing irritable outbursts with coworkers in a *sheltered work experience with a full-time job coach present*.

In response, the Commissioner primarily argues that the ALJ properly relied on the opinions of the state agency psychological consultants, Drs. LeFevre and Phillips, in formulating Langer's RFC. However, neither of these doctors described restrictions with respect to interactions with coworkers. Again, to the contrary, the ALJ placed only some weight on their opinions in part because they failed to address notes in the record that "the claimant's primary anger outbursts were related to interpersonal conflict at work." (AR 37.) Here, too, the court agrees that the ALJ failed to identify the evidentiary basis for concluding Langer could tolerate even "occasional, brief, and superficial interaction[s]" with coworkers." (AR 32.)[8]

## III. Treatment of Subjective Allegations

Finally, Langer challenges the ALJ's assessment of his subjective allegations, including: (1) failing to account for the fact that Langer lives in a group home in considering his activities of daily living; (2) failing to consider Langer's use of multiple psychotropic medications in assessing the severity of his impairments; and (3) failing to consider, at least fairly, medical records noting continued irritable outbursts even after improvement. In light of the court's finding that remand is warranted, the court declines to review these challenges, although the court notes that the last challenge in particular

---

[8] Plaintiff also challenges the ALJ's failure to address a line of questioning with the VE during the hearing about an acceptable "percent off-task" limitation. Although the ALJ did not find any off-task percentage should be included in Langer's RFC, the ALJ may wish to explore on remand whether such a limitation would be warranted.

overlaps with the ALJ's failed treatment of Drs. Beyer's and Agrawal's opinions, and, therefore, on remand the ALJ will have the opportunity to reevaluate all of this evidence.

ORDER

IT IS ORDERED that the decision of defendant Andrew M. Saul, Commissioner of Social Security, denying plaintiff Tristan William Langer's application for disability and disability insurance benefits and supplemental security income is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the opinion set forth above.

Entered this 22nd day of May, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge